[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

Robert Lee Poore

**FILED**

SEP 03 2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

vs.

USP Thomson

Case No: ____24 C 50115____

Brian Lammer, Warren

Hon. Iain D. Johnston

Corrections Officer Jenkins

Corrections Officer Borden, Corrections Officer Miller

Corrections Officer Garcia

Corrections Officer Taylor

(Enter above the full name of ALL
defendants in this action. <u>Do not</u>
use "et al.")

**CHECK ONE ONLY:**          **Amended Complaint**

_____        **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code** (state, county, or municipal defendants)


_____        **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code** (federal defendants)

__X__        **OTHER** (Violation of the 8th Amendment of the United States Constitution.)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

(Violation of the 8th Amendment of the United States
Constitution.)
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**I.** **Plaintiff(s):**

A. Name: Robert Lee Poore

B. List all aliases: None

C. Prisoner identification number: _____

D. Place of present confinement: Out Custody

E. Address: 1015 39th St #201 Betterdorf, IA. 52722

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II.** **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A. Defendant: Brian Lammer

Title: Warren ,USP Thomson

Place of Employment: USP Thomson

B. Defendant: Jenkins

Title: Correction Officer

Place of Employment: USP Thomson

C. Defendant: Borden

Title: Correction Officer

Place of Employment: USP Thomson

(See attachment page for additional defendant listing)

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

NONE

A. Name of case and docket number: _____

_____

B. Approximate date of filing lawsuit: _____

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

_____

_____

_____

D. List all defendants: _____

_____

_____

_____

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____

F. Name of judge to whom case was assigned: _____

_____

G. Basic claim made:_____

_____

_____

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____

_____

_____

I. Approximate date of disposition: _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## IV.    Statement of Claim:

State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including names, dates, and places.  **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

(See Atttached)

4

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**V.      Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

The entry of a money judgement, in an amount, in excess of $ 50,000, exclusive of ligation costs and statutory interest.

VI.      The plaintiff demands that the case be tried by a jury.   ☒ YES   ☐ NO

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this ___27th___ day of __August__, 20 24

___Robert Poore___
(Signature of plaintiff or plaintiffs)

___ROBERT LEE POORE___
(Print name)

___N/A___
(I.D. Number)

___1015 39th STREET___
___#201___

___BETTENDORF, IOWA 52722___
(Address)

Revised 9/2007
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## Attachment Page

1. On January, 21, 2022, Ms. Jenkins woke the Petitioner up and told him that he had been assigned to the snow crew. The Petitioner told her that he was on a medical idle and could not go. Ms. Jenkins asked to see his note from Medical, which the Petitioner then gave her. She returned sometime later and told the Petitioner that his medical idle had expired. The Petitioner that, even though the medical idle had expired, his condition had not been resolved. He also told her that it said, on his medical idle, "until imaging results come back". These imaging results included the following: 1. Ultrasound findings of a suspected hernia in his groin area confirming a hernia diagnosis and, 2.A colonoscopy, for a suspected rectal prolapse which, to date, had not been done.

2. Ms. Jenkins told the Petitioner that Mr. Borden had contacted Health Services and questioned whether the Petitioner's medical idle had in fact expired and he asked whether the Petitioner was medically cleared to work. Health Services informed that the Petitioner had no medical restrictions and was fully cleared to work.

3. The Petitioner concluded at that time that he had two options. First, that he could go to work and risk further injury or, second, that he could refuse to work and receive a disciplinary infraction and confinement in the Solitary Housing Unit. Having been involuntarily placed in this lose-lose situation, the Petitioner elected to go to work which remained a snow crew work assignment. When he arrived for work detailing, he found that the snow crew was divided into two groups. Because the Petitioner as experiencing significant pain at this time walking, he chose to be placed in the group that operated form a pick-up truck, allowing him to minimize his walking. This group then went to B Unit to move lockers.

4. The Petitioner picked up trash for as long as he was able to. There were then more than 200 120-pound lockers that had to be moved. Rather than attempting to lift the locker, the Petitioner slid the lockers across the floor. The Petitioner continued with the moving of

lockers for several hours. He was in severe distress and pain during this time. His pain levels in his groin were at an 8/10. He was experiencing a sharp and burning persistent pain in his groin, which was the location of his hernia, which pain was radiating as high as into his navel. The pain persisted for an entire week without resolution or relief. The Petitioner was also experiencing dizzy spells.

5. The Petitioner continued on this work detail for three more days. During these three days, and fortunately for the Petitioner, the Correctional Office on duty these days, knowing of the Petitioner's medical condition, did not call him to work.

6. On January 25, 2022, at around noon, Mr. Borden summoned the Petitioner to his office. Mr. Borden stated to the Petitioner that he had directly notified many Correctional Officers that the Petitioner should not be called to work, though he could not promise the Petitioner that this would prove to be the case.

7. On January 25, 2022, the Petitioner was called to Health Services and he was provided a new medical idle, confirming that the Petitioner should not have been compelled to move heavy lockers or to lift anything over 15 pounds or any activity involving strenuous activity. The new medical idle was for a 6-month term.

8. On January 27, 2022, the Petitioner put in for a sick call detailing a significant increase in his groin pain and an expansion of symptoms. Ms. Miller advised the Petitioner that she would "put him in" to dee the doctor tough had no idea when that might be.

9. On January 30, 2022, the Petitioner asked Health services when he would be able to see the Doctor, and he was told that the Doctor would be in on December 31. On December 31, the Doctor saw over a dozen inmates, though did not visit with the Petitioner.

10. On February 1, 2022, the Petitioner put in a copout to Ms. Saccucci, as he was continuing have dizzy spells and asking for medical attention. Later that day, I gave a sick call request to Ms. García. The Petitioner told Ms. Garica that he had given a sick call request to Ms. Miller on January 27 and Ms. Garcia proceed to tell him that there was no

record of a sick call being put in that day.

11. On February 2, 2022, at 6 a.m. the Petitioner put in another sick call request. At 7:30 am. the Doctor called the Petitioner into his office to examine him. By 11 a.m., the Petitioner was transported to the local hospital Emergency room where he had a CT scan performed. The attending physician told the Petitioner that he should not have been doing any lifting whatsoever and followed with a note to not lose more than 5 pounds for, if he did, it would be life threatening. If the Petitioner did so, he potentially would be at risk for life-threatening injury. The attending physician was already concerned about a life-threatening injury which is why she ordered the CT scan immediately.

12. Fortunately for the Petitioner, his hernia didn't rupture though it did rip further. If it had ruptured, the Petitioner could have died because Ms. Miller ignore his sick call not only once, but twice. Having a medical degree, Ms. Miller knew that the Petitioner's injury could have become life threatening and she still chose to ignore it not only once, twice. The prompt response by medical once my sick call was entered is further evidence of Ms. Millers gross and willful medical negligence. Ms. Millers obvious attempt to cover up medical' previous neglect of sending me out to work could have cost the Petitioner his life. The Petitioner sought medical care 4 times before anything was done to help him. The first time on January 25th, the Petitioner was told to take OTCs for pain as if that could repair damage done. No physical exam was done.

13. The Petitioner was then told to take Tylenol. The second time Ms. Miller took the Petitioner's cop-out, acted concerned, and told the Petitioner she would get him in to see the doctor, but even put his sick call in.

A copy of the Petitioner's sick call dated 1-27-22 was included in the Petitioner's BP-8 dated 2-2-22 and Ms. Taylor had no comment about that. The third time Ms. Miller refused to even accept the Petitioner's sick call dated 2-22-22 because "we don't do sick calls on

Wednesdays". The Petitioner's attempt to get medical care was finally taken seriously. Mr. Marsh actually examined the Petitioner and then declared his condition to be "an emergency".

14. The Petitioner's emergency condition lasted 13 days and four attempts to get medical care. Furthermore, Ms. Taylors advice top "utilize established sick call procedures", which ignoring the fact that 2 of the Petitioner's sick calls were not even entered is was entirely unacceptable, especially when the Petitioner submitted evidence to support his claim that he was denied medical care twice. Not only has no attempt at resolution been made, but the problem wasn't even acknowledged. Finally sending the Petitioner to the Hospital Emergency Room 13 days later does not change the facts that: A) the Petitioner was sent on a work detail, against medical advice, that was not only possible to injure the Petitioner further: B). The Petitioner was told to take Tylenol for what could have been a life-threatening injury: C). The Petitioner was denied medical care by Ms. Miller when she pretended to take his sick call on 1-27-2022. And D). The Petitioner was denied medical care for a potentially life-threatening injury by Ms. Miller again because it was Wednesday 2-2-22.

15. On January 27th, 2022, Ms. Miller took the Plaintiff's sick call and told the Plaintiff that she would get him in to see the doctor an then she threw his sick call notice away.
In addition, on January 27th, 2022, the Plaintiff followed up with Ms. Horst a few days later. Ms. Horst advised the Plaintiff to take Tylenol.

16. On February 1st, 2022 the Plaintiff again follow up with Ms. Garcia at pill line after the put in a cop out to Ms. Sarcucci. Ms. Garcia indicated to the Plaintiff that his sick call request was never entered.

17. On February 2th, 2022, Ms. Miller refused to take the Plaintiff's sick call request because it was a Wednesday.

18. On February 3rd, 2022, Ms. Marsh examined the Plaintiff and referred him to Dr. Catt who sent the Plaintiff to the hospital emergency room.

**Attachment Page for Additional Defendant Listing**

MIller

E. Defendant: _____

Corrections Officer

Title:_____

USP Thomson

Place of Employment:_____

Garcia

F. Defendant: _____

Corrections Officer

Title:_____

USP Thomson

Place of Employment:_____

Taylor

G. Defendant: _____

Corrections Officer

Title:_____

USP Thomson

Place of Employment:_____





ROBERT POORE
1015 39th STREET
#201
BETTENDORF, IOWA 52722

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60604